IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL DILLINGHAM,              )
                                 )
          Petitioner,            )          Civil No. 03-1665-AA
                                 )          OPINION AND ORDER
     vs.                         )
                                 )
ROBERT LAMPERT,                  )
                                 )
          Respondent.            )
_____      )

Tonia L. Moro
Assistant Federal Public Defender
15 Newtown Street
Medford, OR 97501
     Attorney for petitioner

Hardy Myers
Attorney General
Douglas Y.S. Park
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096
     Attorneys for respondent

AIKEN, Judge:

     Petitioner brings this federal habeas corpus petition

challenging his 1998 conviction for sodomy in the first degree,

unlawful sexual penetration in the first degree, and sodomy in

Page 1 - OPINION AND ORDER

the second degree on the grounds that his plea and sentence are invalid because he received ineffective assistance of counsel and because the District Attorney violated state law and due process in presenting child sex abuse orientation to the grand jury.  The petition is denied and this case is dismissed.

BACKGROUND

On December 17, 1997, the grand jury returned an indictment charging petitioner Michael Dillingham ("petitioner") with 13 counts in Josephine County Case No. 97-0871, and with 6 counts in Josephine County Case No. 97-0872.  On March 18, 1998, the grand jury returned another indictment charging petitioner with an additional 18 counts in Josephine County Case No. 98-0237.  The charges (37 in all) included sexual abuse, sodomy, unlawful sexual penetration (in various degrees), attempted sodomy, and coercion, against three different minors.

On October 13, 1998, petitioner entered a guilty plea to one count of sodomy in the first degree, one count of unlawful sexual penetration in the first degree, and one count of sodomy in the second degree.  In exchange for his plea, the remaining 34 counts were dismissed.  The court sentenced petitioner to a 100-month term of imprisonment on the sodomy in the first degree conviction, a consecutive 100-month term of imprisonment on the unlawful sexual penetration conviction, and a concurrent 75-month term of imprisonment on the sodomy in the second degree

Page 2 - OPINION AND ORDER

conviction.  Unfortunately, petitioner's trial counsel, Mr.
Morrow, was deceased approximately two years after petitioner
entered his plea.

Petitioner directly appealed his sodomy and unlawful sexual
penetration convictions.  The convictions were affirmed without
opinion by the Oregon Court of Appeals and petitioner did not
seek review by the Oregon Supreme Court.  See State v.
Dillingham, 164 Or. App. 318, 991 P.2d 66 (1999).

Petitioner then filed a petition for post-conviction relief
("PCR"), alleging two ineffective assistance of counsel claims
based on counsel's alleged (1) failure to adequately investigate
petitioner's case, and (2) improper pressuring of petitioner to
plead guilty; and one claim alleging that petitioner's due
process rights were violated because his grand jury received
unsworn testimony during an orientation, to the effect that
children do not falsely report sexual abuse.  Relief was denied
by the Circuit Court on March 5, 2002.  Petitioner appealed the
PCR trial court's denial of relief; the Oregon Court of Appeals
affirmed the Circuit Court without opinion, and the Oregon
Supreme Court denied review.  Dillingham v. Lampert, 186 Or. App.
372, 64 P.3d 584, rev. denied, 335 Or. 504, 72 P.3d 636 (2003).

Petitioner filed a *pro se* petition for writ of habeas
corpus, pursuant to 28 U.S.C. § 2254, on December 3, 2003,
alleging the following four grounds for relief: (1) ineffective

Page 3 - OPINION AND ORDER

assistance of counsel; (2) illegal "orientation" of the grand
jurors who initially indicted him; (3) the victims' poor
character rendered them unbelievable; and (4) cruel and unusual
punishment because his sentence is too long and his place of
conviction is too far from his parents' home.  Petitioner has
since acquired the assistance of counsel.  Counsel argues only
two grounds for relief - ineffective assistance of counsel and
illegal "orientation" of the grand jurors.  The remaining claims
raised in petitioner's *pro se* brief were not presented to
Oregon's highest Court during petitioner's direct appeal
proceedings, and as such are barred for failure to exhaust.  28
U.S.C. § 2254(b)(1).  Therefore this court will limit its review
to the claims for relief raised by petitioner's counsel.

<u>DISCUSSION</u>

Petitioner brings this federal habeas corpus proceeding
challenging his convictions for sodomy in the first degree,
unlawful sexual penetration in the first degree, and sodomy in
the second degree.  Petitioner alleges that his trial counsel,
Mr. Morrow, failed to adequately investigate his case, and
regarding his guilty plea, improperly pressured him to plead
guilty.  Petitioner also alleges his due process rights were
violated because the grand jury heard unsworn testimony from the
"Family Friends" organization during its orientation.  This
orientation effectively instructed the grand jury that children

Page 4 - OPINION AND ORDER

do not falsely report sexual abuse.

A.   Adequacy of Counsel

At the post-conviction hearing held February 19, 2002, petitioner, represented by counsel, testified as to his understanding of the guilty plea and potential sentence as follows:

Q.   Okay.  Did you — you eventually entered a plea in this case.  Is that correct?

A.   Right.

Q.   What plea did you enter?

A.   It was a no contest plea.  Morrow told me that there's people that are sometimes not — they're not guilty of a crime.  They say no contest so — so they're not ever admitting to something that they didn't do.

Q.   Okay.

A.   And I don't remember all those details of what he — how he described that.

Q.   Okay.  Did you — did you want to go to trial on this matter?

A.   There was never any other — any other thought other than going to trial and winning it.  I didn't know why he didn't seem to be trying to prepare and learn what was going on.

Q.   Okay.  How — how did you end up entering this no contest plea?  When did — when did Mr. Morrow first suggest or did Mr. Morrow — was he the one who suggested the no contest plea?

A.   Mr. Morrow called me a day before the scheduled date of the trial and said that maybe we should enter a plea bargain and I'd get five (5) or six (6) years and then he said he needed me to call back within — within a certain length of time to let him know what I wanted to do and I think he gave me two (2) hours or something — something like that.  So I'm calling my family.  What should I do?  This was never — this

Page 5 - OPINION AND ORDER

was never an option and — and I still hadn't decided even
when I'd gone to trial the next day to plea bargain.  It —
it was never (inaudible) I never intended to do.

Q.  Okay.  Why is that?  Why did you want never want to
enter a plea?

A.  Because I wasn't guilty of the charges that — that was —
that were put against me and I — I expected the legal system
to protect me and I think (inaudible) that.

Q.  Okay.  Now, you — did you tell Mr. Morrow this?  Was it
clear to him that you wanted to go to trial?

A.  There was never any other — and other mention other than
going to trial.

Q.  So, it was — was is clear to Mr. Morrow?

A.  Between myself and Morrow.

Q.  Okay.  Did — and did — what did Mr. Morrow tell you
about going to trial?  Did he — did he say okay, do you want
to go to — what did he say, specifically?

A.  I — I don't think he ever said anything about going to
trial.  I don't — I don't know — I don't think he was ever
prepared.  He never sat down with me and talked over the
issues of what — of how this would work.  Going to trial and
what would be — what would be — what would be entailed in
that.

Q.  Did he — did he indicate that if you wanted to go to
trial, he would go to trial?

A.  No.  He would not let me go to trial.

Q.  Okay.

A.  He said no.  He — he said I'd never see the light of day
and I felt very pressurized to enter the plea bargain that —
that I'd never even — even thought that — the thought ever
crossed my mind of doing that.

Q.  Okay.  Did — did you try to terminate Mr. Morrow?  Did
you try to fire him?

A.  When I was talking to the attorney — or I'm sorry — to

Page 6 - OPINION AND ORDER

the judge, I told him that I — I wanted to fire Mr. Morrow
or get him to terminate.  I don't remember the words he
said.  He said for years now, that he's — that the judge
said he was aware of Mr. Morrow's reputation and that he
just — he just denied it.  He didn't say anything.  He just
said he was aware of Mr. Morrow's reputation.

Q.  Okay.  You — you'd — you'd indicated just a minute ago
that you felt, I think the word you used was pressurized, to
enter a plea.  Why — why would...

A.  There was no other word other than ... that's all —
that's all it was.  It was — it was — he would not take me
to trial as I wanted him to do and he was not preparing in
any way that I knew of.

Q.  Okay.  And — and so did you feel you had a choice?

A.  I felt I had no choice.  He wasn't going to defend me.

(Res. Ex. 113 at 23-26.)

The court issued a written opinion letter denying post-conviction

relief and entered the following findings:

> ... Petitioner also claims Mr. Morrow refused to defend
> him in trial and pressured him to plead to the charges.
> Petitioner's sister testified that Mr. Morrow told her that
> if petitioner went to trial he "would never see the light of
> day" and would "die in prison."  Petitioner had been charged
> with 37 counts.  As indicated above, the evidence was
> compelling.  Petitioner has failed to show that his trial
> counsel's advice to plead no contest to three charges in
> exchange for having the remainder of the charges dropped was
> not in the highest of professional standards.  At
> sentencing, petitioner was given opportunity by the court to
> change his mind, ask questions and reject the plea
> agreement.  Petitioner indicated that Mr. Morrow was an
> "excellent attorney" and that he accepted the agreement
> entirely.  Finally, defendant took petitioner's deposition
> and introduced it in this case.  Aside from showing
> petitioner's markedly poor memory, it is devoid of any
> information, suggestions or ideas that might have had a
> tendency to affect the result in petitioner's criminal case.

(Res. Ex. 114 at 2.)

The post-conviction court then concluded that petitioner was not denied his effective assistance of counsel guaranteed by the United States Constitution and as articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, a defendant seeking to establish ineffective assistance of counsel must "show both a deficient performance and prejudice to the defense - a reasonable probability that but for the errors, the result of the proceeding would have been different." <u>United States v. Cochrane</u>, 985 F.2d 1027, 1030 (9th Cir. 1993)(citing <u>Strickland</u>, 466 U.S. at 687, 694)).

1. Acceptance of the Plea Bargain

In the context of a guilty plea, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's advice regarding the consequences of the plea was not within the range of competency demanded of criminal attorneys and that, but for counsel's advice, he would not have pled guilty. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985).

I find that the post-conviction court's findings are supported by the record. Petitioner's testimony at the post-conviction hearing was directly controverted by statements by counsel at the plea hearing, direct questioning by the trial court, and statements by petitioner at the plea hearing.

At sentencing, petitioner was given ample opportunity to discuss the plea with his counsel, to ask questions of the court,

Page 8 - OPINION AND ORDER

and to change his mind.  The transcript of the plea hearing

reveals patient attempts by the presiding judge to ensure

petitioner understood and had carefully considered the

implications of entering the no contest plea.  After an initial

recess to allow petitioner to discuss the plea further with his

counsel, the court gave the victim's families an opportunity to

express their approval of the plea bargain, and then continued:

> The Court: ... Mr. Dillingham, you have heard Mr. Newman and
> your attorney explain the deal to me.  You've heard me
> explain the deal as I understand it to the victims.  Is that
> your understanding also?
>
> A.  Yes, Your Honor.
>
> Q.  You have any questions about this, what we've done, the
> procedures, what's likely to happen at sentencing?
>
> A.  I don't think we have time.  It's just how the system
> operates.  Just kind of not what one would expect, once
> you're in there, you get locked in a cell, your head touches
> one and you're locked in a little room and you can't go
> anywhere.  It's just like you're guilty before you've even
> gone to trial.
>
> Q.  Well. you're not.  And I guess as you noticed I was
> talking to the victims, I wanted to let them know that they
> had some power in what was happening here today.
>
> A.  Right.
>
> Q.  I'm telling you you have power also.  This deal does not
> have to happen if you don't want it to happen.  The
> alternative to the deal, as expressed by the state and your
> attorney, agreed to somewhat reluctantly by the victims, is
> in your hands.  Your alternative to taking the deal is to
> stand trial on all 37 counts.  That's your decision.  And
> it's a tough decision and I think I've given you a lot of
> time to think about it.
>
> A.  Yes, Your Honor, I appreciate that.  I really do.
>
> Q.  And kind of like the victims, you're going to have to

choose between two possibly poor alternatives, but although they're poor alternatives it is your choice as to how you want to proceed.  Are you confident and willing to proceed as described here or would you rather go to trial?

A.  It doesn't seem like I've had too much - I know we have to decide this right now.  It's been so much, a decision that affects a person's life, and their family, their friends, their relatives, there's hundreds of people.  It's not been a positive thing.

Q.  It's a very big decision.  It's got a lot of ramifications.  But this is the time, and now is the time and this is the place, so.

A.  I accept everything.

The court proceeded to ask petitioner five more times whether  he understood the plea or needed more time to discuss it with counsel.  Petitioner stated that counsel was an "excellent attorney" and that he accepted the plea agreement in its entirety.  (Res. Ex. 103 at 8-10.)

From this record, there is no indication that petitioner was not fully informed by his attorney or provided an opportunity by the court to receive further clarification from his attorney about the consequences of his plea or other options that were available to him.  Mr. Morrow's October 14, 1998 letter to petitioner's brother states that Mr. Morrow had good reason to believe that petitioner would have been convicted if he had stood trial.  Among those reasons was the fact that petitioner had lied to police about sexual paraphenilia, magazines, and canisters to sniff gas found in his apartment.  Mr. Morrow's letter is well-reasoned, coherent, and sensitive to the feelings of petitioner's

Page 10 - OPINION AND ORDER

family following the sentencing.  (Res. Ex. 109, Letter from Morrow to John Dillingham of 10/14/98, at 2.)  Given the number and nature of the charges against petitioner, as well as the weight of the evidence against him, I find no evidence that petitioner's trial attorney rendered inadequate assistance in securing a plea bargain.

Under Hill v. Lockhart, petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  474 U.S. at 59.  At the time of the plea hearing, petitioner was facing charges on 37 counts.  In exchange for his plea of no contest, the prosecutor dismissed 34 of the 37 charges.  Had petitioner proceeded to trial, he would have faced the possibility of conviction on more than three times the number of counts, resulting in the imposition of a much more serious sentence.  By advising petitioner to plea no contest, counsel succeeded in having the bulk of the charges dropped.

I find no evidence to support petitioner's contention that he was willing to go to trial, beyond his mere after-the-fact assertion, and thereby risk a total of 37 convictions including three Measure 11 charges.  Consequently, I find that petitioner has failed to meet his burden to show that there was a reasonable probability that he would have insisted upon going to trial in the face of the charges and the evidence against him. _____

2.  Adequacy of Counsel's Investigation

Defense counsel has a duty to conduct reasonable investigation of the claims against the defendant, or to make a reasonable decision that particular investigation is unnecessary. Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001) (quoting Strickland, 466 U.S. at 691).

The record reveals that investigation on these charges began July 10, 2003. (Res. Ex. 109, Hursey Invoice.) By October 13, 2003, petitioner's investigator had interviewed 29 people. Id. The investigator's invoice also references two telephone conferences with petitioner, dated September 1, 2003, and October 7, 2003, informing petitioner of the progress of the investigation. This record shows that a substantial amount of time was spent, over a three-month period, investigating witnesses to petitioner's case. On cross-examination at the PCR hearing, petitioner admitted to not knowing when the investigation began or what exactly had been done during the investigation. (Res. Ex. 113 at 46.)

Respondent's deposition of petitioner taken July 2001 does not reveal any specific information or evidence that petitioner knew of and that petitioner's trial counsel did not discover during the investigation. Petitioner could not recall names of people who were not interviewed that he thought should be interviewed, nor could he point to any person who could be a witness to his innocence. Petitioner stated that he sent "stacks" of information to Mr. Morrow to assist with the

Page 12 - OPINION AND ORDER

investigation of the case, information that petitioner thought would be helpful.  Upon further questioning, however, petitioner was unable to explain what information he had sent or why it would have been helpful to his case. (Pet. Ex. 111 at 16-21, 29-32.)

Because petitioner has failed to provide any ideas or information regarding evidence that should have been discovered during the investigation of his case and that would have supported his defense, he fails to meet his burden of showing that his counsel's investigation was inadequate.  I find that counsel's investigation was reasonable under the Strickland standard.  Strickland, 466 U.S. at 691.

Petitioner has failed to show that he received ineffective assistance of counsel either during the investigation or regarding his no contest plea.  Furthermore, petitioner has not shown that but for any errors, the result of the proceeding would have been different.  Petitioner has presented no information, evidence, or ideas that support his innocence.  Therefore, petitioner is not entitled to habeas relief on the claims of ineffective assistance of counsel.

B.  Orientation of Grand Jury - Due Process

Petitioner alleges that his due process rights were violated because his grand jury received unsworn testimony from the "Family Friends" organization during an orientation.  Because petitioner is not entitled to an evidentiary hearing and

Page 13 - OPINION AND ORDER

therefore is not entitled to expand the record at this time, and because petitioner has failed to demonstrate any error in his grand jury proceedings that effected the validity of his no contest plea, petitioner is not entitled to habeas relief on this claim.

1.  Expanding the Record

Petitioner seeks to introduce exhibits which show that the Josephine County Circuit Court found that the child sex abuse orientations violated provisions of Oregon law regulating grand juries, and declared that these orientations were designed to bias the grand jurors to indict.  Pet. Ex. 2.  Petitioner argues that his indictment therefore was not based upon an unbiased determination of probable cause, and resulted in a deprivation of liberty in the form of pretrial detention and preclusion from contact with minors and from returning to his home or business. In order for this court to consider new evidence not presented during petitioner's state court proceedings, petitioner must show (1) that the claim either relies on a new rule of constitutional law that was previously unavailable or a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the petitioner guilty.  28 U.S.C. § 2254(e)(2).

Here, petitioner does not assert that this claim rests on

new constitutional law.  In addition, whatever merits these
exhibits may have, petitioner did not seek to introduce these
facts at the post-conviction hearing, despite the fact that they
were available at that time.  The Josephine County case which
decided that the child sex abuse orientations were unlawful was
decided June 14, 2001.  Although petitioner first filed a formal
petition for PCR hearing February 13, 2001, the PCR hearing was
not held until February 19, 2002.  Petitioner alleged the claim
of biased grand jury proceedings in his PCR petition, which
suggests that he was aware of the broader allegations at that
time.  Therefore, petitioner could have introduced this evidence
at the state court proceedings.

    Finally, petitioner has not shown that but for the alleged
error in the grand jury orientation, no reasonable factfinder
would have found him guilty.  Petitioner states only that had his
grand jury not heard the "Family Friends" orientation, he "would
have had the benefit of grand jurors who were not tainted" by
these orientation sessions.  (Pet.'s Mem. Supp. Petit. at 34.)
Petitioner offers no evidence to show that such an untainted
grand jury could not have indicted him.  Thus petitioner has not
made the necessary showing to allow this court to consider the
merits of his new evidence.

2.  Effect on Plea

    Even assuming, *arguendo*, that this court takes judicial

notice of both the state court proceedings and the newspaper
articles related to the grand jury orientations, petitioner has
failed to show that his no contest plea was not knowing,
voluntary, and intelligent because of a defect in his grand jury
proceedings.  Where a criminal defendant pleads guilty to
charges,[1] he may thereafter only attack the character of the
plea, and he "may not thereafter raise independent claims
relating to the deprivation of constitutional rights that
occurred prior to the entry of the plea."  Tollet v. Henderson,
411 U.S. 258, 267 (1973).  Under Tollet, a petitioner must show
not only that the grand jury was biased, but also that his
attorney's advice to plead guilty without having made inquiry
into the bias of the grand jury rendered that advice outside the
range of criminal attorney competence.  Id. at 268.  Here,
petitioner's trial counsel could not have discovered the improper
grand jury orientation at the time of the plea hearing, because
the "Family Friends" representatives were not listed on the
orientation witness list.[2]  Thus there was no error by trial
counsel in failing to inquire into the bias of the grand jury.
Therefore even if petitioner's new exhibits show an error in his

---

[1]Petitioner in this case plead no contest, which "like the plea of guilty, it is an admission
of guilt for the purposes of the case." Hudson v. U.S., 272 U.S. 451, 455 (1926).

[2]As discussed above, petitioner could, however, have discovered and presented this
evidence at his PCR proceedings, in which case he would be entitled to have the record expanded
at this time.

grand jury proceedings, he is not entitled to habeas relief on those grounds because he has not shown that the error had any effect on the validity of his plea.

<u>CONCLUSION</u>

I find that petitioner's trial counsel's representation was not constitutionally deficient, nor did petitioner affirmatively prove actual prejudice as required by <u>Strickland</u> and <u>Hill</u>. Therefore, petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 (doc. 2) is denied.  This case is dismissed. IT IS SO ORDERED.

Dated this  20   day of April 2006.


/s/ Ann Aiken
Ann Aiken
United States District Judge


Page 17 - OPINION AND ORDER